Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

*JUN LIN LIU individually and on behalf of all other employees similarly situated*,

Plaintiff,

v.

NEW DICKSON TRADING, LLC, *et al.*,

Defendants.

Civil Action No.: 21-15779 (ES) (JRA)

OPINION

SALAS, DISTRICT JUDGE

Before the Court is plaintiff Jun Lin Liu's ("Plaintiff") unopposed, renewed motion for default judgment against defendants New Dickson Trading, LLC ("New Dickson"), and Nan Sheng Jiang ("Jiang") (together, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). (D.E. No. 12 ("Motion" or "Mot.")). Having considered Plaintiff's submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); *see also* L. Civ. R. 78.1(b). For the reasons set forth below, Plaintiff's Motion is **GRANTED**.

I.   BACKGROUND

A.  Factual History[1]

This action arises out of Defendants' alleged failure to provide Plaintiff with minimum

---

[1] The Court notes that in its previous decision, it raised general discrepancies in the Complaint and asked Plaintiff to clarify those points. (D.E. No. 10 at 2 n.2). Plaintiff's counsel's affirmation submitted with his renewed motion for default judgment provides the following clarifications: (i) "'Honshu Sushi' was an incorrect party and should be replaced with 'New Dickson Trading, LLC'" and (ii) "Plaintiff 'Cao' was an incorrect party and irrelevant to this matter so it should be replaced by Plaintiff 'Jun Lin Liu.'" (D.E. No. 12-5 ("Bae Aff.") ¶¶ 16–17).

1

wages and overtime pay.[2] Defendant New Dickson operates a shipping and delivery business located in Linden, New Jersey. (D.E. No. 1 ("Complaint" or "Compl.") ¶ 18). New Dickson has roughly ten employees, including five delivery workers, four staff, and one dispatcher. (*Id.* ¶ 10). Defendant Jiang is New Dickson's principal. (D.E. No. 12-10 at 2 (ECF pagination)). According to the Complaint, Defendant Jiang interviewed Plaintiff by phone for his position, determined his salary, paid him, handled his payrolls, and supervised him. (Compl. ¶ 11).

Plaintiff alleges that Defendants employed him as a non-exempt delivery driver from July 14, 2018 until August 7, 2019, and again from March 14, 2021 until June 8, 2021. (Compl. ¶¶ 8 & 27; Bae Aff. ¶ 19).[3] Throughout this time, Plaintiff allegedly worked six days a week for 91.5 hours per week. (Compl. ¶ 19). During his employment, Plaintiff was paid a fixed monthly salary in a combination of cash and checks. (*Id.* ¶¶ 11 & 21–23). Specifically, Plaintiff received a fixed salary of $2,600 per month between July 14, 2018 and February 14, 2019; a fixed salary of $2,800 per month between February 15, 2019 and August 7, 2019[4]; and a fixed salary of $3,000 per month between March 14, 2021 and June 8, 2021. (Compl. ¶¶ 21–23; Ex. D).

---

[2]   The Court notes that Plaintiff brought this case as a "collective action" pursuant to 29 U.S.C. § 216(b). (*See* Compl. ¶¶ 30–38). Plaintiff, however, has not pursued a collective action and does not seek default judgment on behalf of the collective. Further, no other plaintiffs have opted in to the collective. Therefore, the Court will only assess the Motion as it pertains to Plaintiff's individual claims.

[3]   The Complaint indicates that Plaintiff worked from July 14, 2018 to June 8, 2021. (Compl. ¶ 8). The Complaint further breaks this down to July 14, 2018 to February 14, 2019, and March 14, 2021 to June 26, 2019. (*Id.* ¶¶ 19–20). The Court previously noted this inconsistency, and the impossibility of work from March 14, 2021 to June 26, 2019. (D.E. No. 10 at 2 n.2). In his renewed Motion and affidavit in support thereof, Plaintiff again provides these same impossible dates. (Mot. at 11–12; D.E. No. 12-2 ("Liu Aff.") ¶ 3). Nonetheless, the Court accepts Plaintiff's counsel's affirmation, which clarifies that Plaintiff was employed from July 14, 2018 until August 7, 2019 and from March 14, 2021 until June 8, 2021. (Bae Aff. ¶ 19).

[4]   The Complaint and renewed Motion both reflect that Plaintiff was paid $2,800 per month between February 15, 2019 and ***June 26, 2019***. (*Id.* ¶ 22; Mot. at 12). However, as discussed above, Plaintiff's counsel affirmed that Plaintiff was employed from February 15, 2019 through ***August 7, 2019***. (Bae Aff. ¶ 19). Given that Plaintiff's damages calculations reflect a monthly salary of $2,800 from February 15, 2019 through August 7, 2019, and Plaintiff has not provided any alternative salary for the time period of June 26, 2019 through August 7, 2019, the Court construes Plaintiff's pay for purposes of this opinion as $2,800 from February 15, 2019 to August 7, 2019. (*See* D.E. No. 12-4 ("Ex. D") at 3 (ECF pagination)).

Plaintiff filed the instant action against Defendants for unpaid overtime and minimum wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Counts I & III), and the New Jersey State Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56 *et seq.* (Counts II & IV). (Compl.). Plaintiff maintains that Defendants failed to pay him overtime wages and a minimum hourly wage in violation of the FLSA and NJWHL. (*Id.* ¶¶ 48 & 69). Plaintiff additionally alleges that Defendants failed to notify him and other employees in writing about the terms and conditions of their employment—such as their rate of pay, pay cycle, or rate of overtime pay—or about their rights as employees, as required by the FLSA. (*Id.* ¶¶ 28 & 49–50). And according to Plaintiff, Defendants acted "knowingly, intentionally and willfully." (*Id.* ¶¶ 16 & 26).

### B. Procedural History

Plaintiff commenced the instant action on August 20, 2021. (*Id.*). On September 20, 2021, Plaintiff served the Complaint and summons on Defendants. (D.E. No. 4). On December 14, 2021, after Defendants' time to answer or otherwise respond expired, Plaintiff requested entry of default. (D.E. No. 5). Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered default against Defendants on December 15, 2021. Plaintiff filed his first motion for default judgment on January 28, 2022. (D.E. No. 8). In a Letter Order dated August 5, 2022, the Court denied Plaintiff's motion without prejudice, allowing Plaintiff to file a renewed motion for default judgment along with any documentation necessary to address deficiencies noted by the Court. (D.E. No. 10). Plaintiff filed the instant Motion on September 2, 2022. (Mot.). Plaintiff's Motion is unopposed.

## II.   LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or

otherwise respond to the action filed against them. Fed. R. Civ. P. 55(b)(2). To obtain a default judgment pursuant to Rule 55(b), the moving party must first obtain an entry of default from the Clerk of Court pursuant to Rule 55(a). *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). After obtaining an entry of default, parties are not entitled to the subsequent entry of default judgment as of right; rather, it is within the discretion of the court whether to enter default judgment. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

"Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Travelodge Hotels, Inc. v. Wilcox Hotel, LLC*, No. 17-0391, 2018 WL 1919955, at *3 (D.N.J. Apr. 23, 2018). A party seeking default judgment is not entitled to relief as a matter of right; rather, the Court may enter default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-0896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (quoting *Nautilus Ins. Co. v. Triple C. Const. Inc.*, No. 10-2164, 2011 WL 42889, at *4 (D.N.J. Jan. 6, 2011) (internal quotation marks omitted)). "[T]he factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation marks omitted)). "While the court may conduct a hearing to determine the damages amount, a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgment." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25,

2015) (cleaned up) (citations and internal quotation marks omitted).

In addition, the Court must consider the following three factors prior to granting default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A meritorious defense is one that "if established at trial, would completely bar plaintiff's recovery." *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995) (quoting *Foy v. Dicks*, 146 F.R.D. 113, 116 (E.D. Pa. 1993) (internal quotation marks omitted)).

### III.  DISCUSSION

#### A.  Jurisdiction and Proof of Service

First, the Court is satisfied that it has subject matter jurisdiction over Plaintiff's FLSA and NJWHL claims. The Court has subject matter jurisdiction over Plaintiff's FLSA claims because they arise under the laws of the United States. *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's NJWHL claims because they are related to and arise out of the same controversy as the FLSA claims. *See* 28 U.S.C. § 1367(a).

Second, the Court is also satisfied that it has personal jurisdiction over Defendants. With respect to personal jurisdiction of a company, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citation and internal quotation marks omitted) (alteration in original). "Courts have applied the *Daimler* rules to limited liability companies with equal force." *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at *3 (D.N.J. Apr. 20, 2021) (quoting *Griggs v. Swift Transp. Co.*, No. 17-13480, 2018 WL 3966304, at *2 (D.N.J. Aug. 17, 2018) (internal quotation marks omitted)). In Plaintiff's renewed Motion for

default judgment, he provides that Defendant New Dickson's principal place of business is 24-15 Urbanowitz Ave, Linden, New Jersey 07036.[5] (Mot. at 8; Bae Aff. ¶ 8). Accordingly, the Court may exercise general personal jurisdiction over New Dickson. As to Defendant Jiang, the Court has jurisdiction over him because he was served in New Jersey. (D.E. No. 4 at 2); *See Gerber v. A&L Plastics Corp.*, No. 19-12717, 2021 WL 3616179, at *4 (D.N.J. Aug. 16, 2021) (explaining that in-state service of process confers personal jurisdiction) (citations omitted).

Third, Plaintiff properly and timely served Defendants. Plaintiff filed proofs of service showing that on September 20, 2021, a process server served Defendant Jiang with his own summons and complaint and a summons for New Dickson. (D.E. No. 4 at 1–2; D.E. No. 12-7 at 3–4 (ECF pagination)). Defendant Jiang is authorized to accept service of process on behalf of New Dickson. (D.E. No. 12-10 at 1). Therefore, service is proper as to Jiang as an individual, and as to New Dickson as a limited liability company. *See* Fed. R. Civ. P. 4(e)(2)(A) (an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally"); Fed. R. Civ. P. 4(h) (an unincorporated association may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process").

### B.    Sufficiency of the Pleadings

Having considered the threshold issues of jurisdiction and service of process, the Court turns to the sufficiency of Plaintiff's FLSA and NJWHL claims.[6]

---

[5]     Plaintiff's counsel asserts that New Dickson's principal place of business is 24-15 Urbanowitz Ave, Linden, New Jersey 07036, as this is the location where New Dickson's "highest level officer . . . controlled and participated in the day-to-day operations" of the company. (Bae Aff. ¶ 12). The Court notes that New Dickson's business records reflect a "main business address" of 24 Institute St, Freehold, NJ 07728. (D.E. No. 12-10 at 1). However, because both addresses are within New Jersey, the Court is satisfied that New Dickson's principal place of business is in New Jersey.

[6]     Because the "NJWHL mirrors its federal counterpart," the Court considers the claims under each simultaneously. *Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, No. 16-8772, 2018 WL 1027446, at *3 (D.N.J. Feb. 23, 2018); *Brown v. Apothaker & Assocs. P.C.*, No. 17-3994, 2018 WL 1605148, at *2 n.5 (D.N.J. Apr. 3, 2018).

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). Under the FLSA, employers must pay their employees at least a specified minimum hourly wage for work performed, and an employee who works more than forty hours in a single workweek must be paid for hours worked in excess of forty hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *Id.* § 206. "To state a prima facie claim under the FLSA, a plaintiff must allege that (1) he was an employee of the defendant; (2) the defendant was 'engaged in commerce'; and (3) the defendant failed to pay the federal minimum wage or overtime compensation for hours worked in excess of forty in a given week." *Morales v. Aqua Pazza LLC*, No. 20-6690, 2022 WL 1718050, at *3 (D.N.J. May 27, 2022) (quoting *Perez v. Express Scripts, Inc.*, No. 19-7752, 2020 WL 7654305, at *2 (D.N.J. Dec. 23, 2020)).

The FLSA and NJWHL also provide for individual liability against employers. *Qu Wang*, 2018 WL 1027446, at *2; *Rong Chen v. Century Buffet and Rest.*, No. 09-1687, 2012 WL 113539, at *2–3 (D.N.J. Jan. 12, 2012); *see also* 29 U.S.C. § 203 (defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee"); N.J.S.A. § 34.11–56a1(g) (defining "employer" as "any individual . . . acting directly or indirectly in the interest of an employer in relation to an employee"). "Courts employ a broad interpretation of 'employer' within the context of the FLSA as to effectuate the FLSA's liberal, remedial purposes." *Santiago v. Lucky Lodi Buffet Inc.*, No. 15-6147, 2016 WL 6138248, at *2 (D.N.J. Oct. 21, 2016) (citation and internal quotation marks omitted). The determination of whether an individual is an employer turns on that individual's control, and courts consider whether the individual: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules

7

or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. (citation omitted); *see also Rong Chen*, 2012 WL 113539, at *2–3 (explaining that the same analysis is used to determine whether an individual is an employer under the NJWHL as under the FLSA).

Applying these standards, the Court concludes that Plaintiff's unchallenged allegations establish violations of the FLSA and NJWHL by both Defendants. Plaintiff alleges that he was employed by Defendants from July 14, 2018 through August 7, 2019 and from March 14, 2021 through June 8, 2021. (Compl. ¶¶ 8 & 18–23; Bae Aff. ¶ 19). During that time, Plaintiff alleges that he worked 91.5 hours per week, was paid less than the minimum hourly wage[7], and did not receive overtime compensation for the 51.5 hours per week he worked that was in excess of 40 hours. (Compl. ¶¶ 24–25, 65–69 & 74–78). Plaintiff further alleges that Defendants engaged in interstate commerce and had gross sales in excess of $500,000 per year. (*Id*. ¶ 9). "These allegations, when accepted as true, are sufficient for the Court to find that Plaintiff has stated viable causes of action for violations of the FLSA and NJWHL" against New Dickson. *Jian Zhang v. Chongqing Liuyishou Gourmet NJ Inc*, No. 18-10359, 2019 WL 6318341, at *2 (D.N.J. Nov. 26, 2019); *see also Lurty v. 2001 Towing & Recovery, Inc.*, No. 18-06302, 2019 WL 3297473, at *3 (D.N.J. July 23, 2019).

As to Defendant Jiang, Plaintiff sufficiently pleads that Jiang was his "employer" under 29 U.S.C. § 203 and N.J.S.A. § 34.11–56a1(g). According to the Complaint, Defendant Jiang is an

---

[7] Specifically, Plaintiff alleges that he was paid a monthly salary of $2,600 from July 14, 2018 to February 14, 2019, $2,800 from February 15, 2019 to August 7, 2019, and $3,000 from March 14, 2021 to June 8, 2021. (Bae Aff. ¶ 19; Ex. D). As discussed below, this translates to an hourly wage of $6.56, $7.06, and $7.57, which are below the minimum hourly wage in New Jersey in 2018, 2019, and 2021. (Compl. ¶¶ 66–68); *see* U.S. Dep't of Lab., Wages & Hour Div., *Changes in Basic Minimum Wages in Non-Farm Employment Under State Law: Selected Years 1968 to 2021* (April 2023), https://www.dol.gov/agencies/whd/state/minimum-wage/history (hereinafter "Minimum Wage Rates").

officer and/or managing agent of New Dickson.  (Compl. ¶ 11).  Defendant Jiang allegedly interviewed Plaintiff by phone for his position, determined his salary, paid him, handled his payrolls, and supervised him.  (*Id*.).  These facts sufficiently allege that Defendant Jiang was Plaintiff's employer pursuant to the FLSA and NJWHL.  Accordingly, the Court finds that default judgment against Defendant Jiang is appropriate.

   **C.**  **Statute of Limitations**

  The Court must also address the statute of limitations for the FLSA and NJWHL, as this will determine the period for which Plaintiff can recover under both statutes.  The FLSA and NJWHL have different statutes of limitations.  The FLSA provides a two or three-year statute of limitations period, depending on whether a defendant-employer committed a willful violation.  29 U.S.C. § 255(a) (providing that a cause of action under the FLSA may be "commenced within two years" unless it arises from a "willful violation," which "may be commenced within three years"); (Mot. at 13–14).  To demonstrate willfulness, a "[p]laintiff must allege 'that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *D'Agostino v. Domino's Pizza*, No. 17-11603, 2018 WL 1914239, at *6 (D.N.J. Apr. 23, 2018) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Allegations that a defendant's violation was intentional and willful, or that the defendant failed to notify the plaintiff of his employment rights, can show a willful violation.  *See e.g.*, *Morales*, 2022 WL 1718050, at *4; *Lin v. Fada Group Inc.*, No. 20-5942, 2021 WL 4963283, at *5 (D.N.J. Oct. 25, 2021).  Here, the Complaint alleges that Defendants acted "willfully and intentionally" based on a "pattern and practice of failing to pay their employees . . . compensation for all hours worked, [and] overtime compensation for all hours worked over forty (40) each week."  (Compl. ¶ 2).  According to the Complaint, Defendants "knew or should have known . . . that failing to do so

would financially injure the Plaintiff." (*Id.* ¶ 51). Finally, the Complaint alleges that Defendants failed to notify Plaintiff and other employees of the terms and conditions of their employment, including their rate of pay, pay cycle, rate of overtime pay, and rights under the FLSA. (*Id.* ¶¶ 28, 49–50). The Court accepts these allegations as true. And because Defendants have failed to plead or otherwise defend, the Court finds that these allegations are sufficient to establish that Defendants acted willfully. As Plaintiff has adequately alleged a willful violation of the FLSA, he may recover damages for unpaid minimum and overtime wages under the FLSA starting from August 20, 2018—three years before he filed the Complaint—and for each payday thereafter.[8]

"For claims accruing prior to August 6, 2019, the NJWHL provided a two-year statute of limitation, regardless of willfulness." *Morales*, 2022 WL 1718050, at *4 n.8 (citation omitted). Following August 6, 2019, the NJWHL provides a six-year statute of limitations period. *See* N.J. Stat. Ann. § 34:11-56a25.1. The six-year statute of limitations period is not retroactive. *See Morales*, 2022 WL 1718050, at *4 n.8. Accordingly, Plaintiff may only recover under the NJWHL starting from August 6, 2019 and for each payday thereafter.

In sum, Plaintiff may not recover under either the FLSA or the NJWHL for any causes of action which accrued prior to August 20, 2018. For causes of action which accrued between August 20, 2018 and August 6, 2019, Plaintiff may only recover under the FLSA. For causes of action which accrued after August 6, 2019, Plaintiff may recover under either the FLSA or the NJWHL.

### D.     Appropriateness of Default Judgment

To determine whether granting default judgment is proper, the Court must make "factual

---

[8] A separate cause of action accrues at each payday following the period during which a claimant rendered services. *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 437 (D.N.J. 2001) (quoting *Mitchell v. Lancaster Milk Co.*, 185 F. Supp. 66, 70 (M.D. Pa. 1960)).

findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc., v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). A defendant's culpable conduct in allowing default is a relevant consideration for a district court. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). First, the current record does not indicate that Defendants have any meritorious defense. *See Malibu Media, LLC v. Deleon*, No. 15-3855, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016) ("The Court may presume that a defendant who has failed to plead, defend, or appear has no meritorious defense."); (Mot. at 10). Second, Plaintiff has been prejudiced by Defendants' failure to answer because Plaintiff has been prevented from seeking relief. *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding that the plaintiff would suffer prejudice if the court did not enter default judgment because the plaintiff "has no other means of seeking damages for the harm caused by [d]efendant"); (Mot. at 10). Third, with respect to the issue of whether default was the result of culpable conduct by the defendant, Defendants have not participated in the litigation despite being served with the Complaint nearly two years ago. *See Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (finding that the defendant was culpable because "there was nothing before the Court to suggest that anything other than [the defendant's] willful negligence caused her failure to file an answer"); (Mot. at 10–11). Thus, Defendants are culpable for defaulting in this case. *See Qu Wang*, 2018 WL 1027446, at *3–4.

### E.     Damages

"While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgment." *Panchal*, 2015 WL

11

5055318, at *2 (internal quotation marks and alterations omitted). "In light of the FLSA's remedial purposes, an employee can meet his burden to establish that he performed work for which he was not properly compensated 'through estimates based on his own recollection.'" *Santiago*, 2016 WL 6138248, at *3 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011)). "The standard for proving damages under the NJWHL is similar to that under the FLSA." *Qu Wang*, 2018 WL 1027446, at *5 (citations omitted). However, "a plaintiff who prevails on his FLSA claim cannot receive duplicative damages for his identical NJWHL claim." *Id.*

Plaintiff here seeks compensatory damages, liquidated damages, attorney's fees, and costs, as well as pre-judgment interest and post-judgment interest. (Mot. at 13). In support of his request for compensatory damages, Plaintiff submitted an affidavit "detailing the length of shifts, relevant weeks worked, and amount of pay received." *Lurty*, 2019 WL 3297473, at *6 (collecting cases). Plaintiff additionally submitted a breakdown of his proposed damages calculations (Ex. D) and an affirmation from his attorney clarifying the dates he worked and his proposed damages calculations (Bae Aff. ¶¶ 19–24). Based on the information provided in these documents, the Court is able to determine the damages owed to Plaintiff. As explained above, given the statute of limitations for the FLSA and NJWHL, Plaintiff may only recover under the FLSA starting August 20, 2018 and under the NJWHL starting August 6, 2019, and may not receive duplicative damages under the statutes.

### i. Compensatory Damages

Under the FLSA, an employer is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C. § 216(b). To determine the proper amount of compensatory damages, the Court calculates the difference between the amount owed to Plaintiff each week and the amount actually paid to

Plaintiff. To determine the amount owed to Plaintiff each week, the Court must determine Plaintiff's "regular rate" or their rate per hour. 29. C.F.R. § 778.109. Some courts calculate a weekly rate by dividing the plaintiff's monthly rate by four, and calculate the plaintiff's hourly rate by "dividing the salary by 40 hours a week." *Qu Wang*, 2018 WL 1027446, at *4 n.3 (citing 29 C.F.R. § 778.109). Here, however, Plaintiff has calculated his weekly rate by multiplying his monthly rate by 12 to determine his yearly rate, then dividing the yearly rate by 52. (*See* Ex. D at 1 (calculating weekly rate of pay as $600 from August 20, 2018 to December 31, 2018 with the following: ((2,600 x 12)/52)). And Plaintiff has calculated his hourly rate, or regular rate, by dividing his weekly rate by the total number of hours he worked a week—91.5—instead of by 40. (*Id.*). Though Plaintiff's calculations differ from the approach taken by some courts, they are consistent with federal regulations. *See* 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."); *id*. § 778.113(b) ("A monthly salary is subject to translation to its equivalent weekly wage by multiplying 12 (the number of months) and dividing by 52 (the number of weeks)."); *Id*. § 778.113(a) ("[T]he regular hourly rate of pay . . . is computed by dividing the [weekly] salary by the number of hours which the salary is intended to compensate."). Based on Plaintiff's calculations—which determined Plaintiff's hourly wage by dividing his weekly wage by the total number of hours he worked per week instead of by 40 hours per week—the Court infers that Plaintiff's monthly salary was intended to compensate 91.5 hours of work per week and accepts Plaintiff's methods for calculating his regular rate. *See Delgado v. Auto Gallery LLC.*, 20-18593, 2021 WL 5864064, at *4 n.4 (D.N.J. Dec. 10, 2021). Accordingly, Plaintiff's regular rate for the relevant time periods is as follows:

- **August 20, 2018 to February 14, 2019:** $2,600 per month x 12 months / 52 weeks = $600 per week. $600 per week / 91.5 hours per week = **$6.56 per hour**

- **February 15, 2019 to August 7, 2019:** $2,800 per month x 12 months / 52 weeks = $646.15 per week. $646.15 per / 91.5 hours per week = **$7.06 per hour**

- **March 14, 2021 to June 8, 2021:** $3,000 per month x 12 months / 52 weeks = $692.31 per week. $692.31 per week / 91.5 hours per week = **$7.57 per hour**

After the Court establishes Plaintiff's regular rate, the Court calculates what Plaintiff should have earned each week based on the higher of Plaintiff's regular rate or the statutorily set hourly minimum wage. *See Qu Wang*, 2018 WL 1027446, at *4 n.3 (citing 29 C.F.R. § 778.109-113(a)). At all relevant times, Plaintiff's regular rate was lower than New Jersey's minimum wage, which ranged from $8.60 per hour in 2018 to $12.00 per hour in 2021. *See* Minimum Wage Rates.[9] Accordingly, the Court calculates what Plaintiff was owed each week using New Jersey's minimum wage rates. Overtime is calculated at one and one-half times the higher of a plaintiff's regular rate or the minimum hourly wage. *See Qu Wang*, 2018 WL 1027446, at *4 n.3. Using these principles, Plaintiff is owed the following in compensatory damages for each relevant period:

- **August 20, 2018 to December 31, 2018 (19 weeks)**
    - $8.60 per hour (*See* Minimum Wage Rates) x 40 hours per week = $344 per week for regular time worked
    - ($8.60/2)+$8.60= $12.90 per hour overtime rate
    - $12.90 per hour x 51.5 hours of overtime[10] = $664.25 per week for overtime worked
    - $664.25 + $344 = $1,008.35 per week owed
    - $1,008.35 per week owed - $600 per week paid = $408.35 per week underpaid
    - $408.35 per week underpaid x 19 weeks = **$7,758.65**

---

[9] As noted previously by the Court, Plaintiff's original motion for default judgment did not calculate damages based on accurate minimum wage rates in New Jersey. (D.E. No. 10 at 3). Plaintiff has corrected this in his renewed Motion. (*Compare* Ex. D, *with* Minimum Wage Rates).

[10] For each week worked, Plaintiff alleges that he worked a total of 91.5 hours per week. (Compl. ¶ 44). After 40 hours per week maximum standard time, this leaves 51.5 hours per week of overtime Plaintiff allegedly worked.

- **January 1, 2019 to February 14, 2019 (6 weeks)**
    - $11.00 per hour (*See* Minimum Wage Rates) x 40 hours per week = $440 per week for regular time worked
    - ($11/2) + $8 = $16.50 per hour overtime rate
    - $16.50 per hour x 51.5 hours of overtime = $849.75 per week for overtime worked
    - $849.75 + $440 = $1,289.75 per week owed
    - $1,289.75 per week owed - $600 per week paid = $689.75 per week underpaid
    - $689.75 per week underpaid x 6 weeks = **$4,138.50**

- **February 15, 2019 to August 7, 2019 (25 weeks)**
    - $11.00 per hour (*See* Minimum Wage Rates) x 40 hours per week = $440 per week for regular time worked
    - ($11/2) + $8 = $16.50 per hour overtime rate
    - $16.50 per hour x 51.5 hours of overtime = $849.75 per week for overtime worked
    - $849.75 + $440 = $1,289.75 per week owed
    - $1,289.75 per week owed - $646.15 per week paid = $643.60 per week underpaid
    - $643.60 per week underpaid x 25 weeks = **$16,090.00**

- **March 14, 2021 to June 8, 2021 (12 weeks)**
    - $12.00 per hour (*See* Minimum Wage Rates) x 40 hours per week = $480 per week for regular time worked
    - ($12/2) +$12 = $18.00 overtime rate
    - $18.00 per hour x 51.5 hours of overtime = $927.00 per week owed for overtime worked
    - $927.00 + $480 = $1,407 per week owed
    - $1,407 per week owed - $692.31 per week paid = $714.69 per week underpaid
    - $714.69 per week underpaid x 12 weeks = **$8,576.28**

As the Court finds no error in Plaintiff's calculations, Plaintiff is owed **$36,563.43** in compensatory damages ($7,758.65 + $4,138.50 + $16,090.00 + $8,576.28). (Mot. at 19).

    ii.   **Liquidated Damages**

Plaintiff also requests liquidated damages under the FLSA and NJWHL. (Mot. at 17–19). The FLSA allows for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "[F]or claims accruing prior to August 6, 2019, an employee may recover liquidated damages under the FLSA for federal wage violations but may not recover liquidated damages for violations

15

of the NJWHL or NJWPL." *Morales*, 2022 WL 1718050, at *5 (citing *Delgado*, 2021 WL 5864064, at *5 and *Jones v. Hesp Solar*, 20-13056, 2021 WL 1904734, at *5 (D.N.J. May 12, 2021)). Following August 6, 2019, the NJWHL allows for liquidated damages of up to 200 percent. N.J. Stat. Ann. § 34:11-56a25.

Under the FLSA, Plaintiff is entitled to 100% in liquidated damages for his claims arising between August 20, 2018 and August 6, 2019. Accordingly, for the period of August 20, 2018 to August 7, 2019, Plaintiff is entitled to **$27,987.15** in liquidated damages under the FSLA ($7,758.65 + $4,138.50 + $16,090.00). (*See* Ex. D at 1–3).

As to Plaintiff's claims arising between March 14, 2021 and June 8, 2021, Plaintiff is entitled to 200% in liquidated damages pursuant to the NJWHL. N.J. Stat. Ann. § 34:11-56a25. Accordingly, for this period Plaintiff is entitled to **$17,152.56** in liquidated damages under the NJWHL ($8,576.28 x 2). (*See* Ex. D at 4).

As the Court finds no error in Plaintiff's calculations, Plaintiff is entitled to a total of **$45,139.71** in liquidated damages. (Mot. at 19).

Because the Court has awarded liquidated damages, the Court will not award pre-judgment interest, as "liquidated damages and pre-judgment interest both serve to compensate an employee for losses caused by delayed receipt of wages to which he is entitled." *Looi v. Wang*, No. 13-1684, 2015 WL 64650, at *3 (D.N.J. Jan. 5, 2015) (citing *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 910 (3d Cir. 1991)); *Zuniga v. AM Framing LLC*, No. 21-8250, 2022 WL 203234, at *5 (D.N.J. Jan. 24, 2022).

        iii.    **Attorney's Fees & Costs**

Plaintiff also seeks attorney's fees under the FLSA and NJWHL. The FLSA directs the court to "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

16

29 U.S.C. § 216(b). And the NJWHL provides that an employee may recover "costs and reasonable attorney's fees as determined by the court." N.J.S.A. § 34:11-56a25. "The Third Circuit uses, and the Supreme Court has endorsed, a 'lodestar' approach for calculating fees in FLSA cases." *Qu Wang*, 2018 WL 1027446, at *5 (citing *Maldonado v. Luca*, 636 F. Supp. 621, 628); *see also Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017).

Plaintiff submits an affirmation from counsel Yongjin Bae, as well as a record of counsels' work and records of their costs, in support of his fee request. (Bae Aff. ¶¶ 25–36; D.E. No. 12-6; D.E. No. 12-7). These documents detail the work performed, the time it took counsel to perform each task, and the applicable hourly rates. Plaintiff's counsel's affirmation provides information regarding each individual who contributed to this case, including their qualifications and hourly rates, remedying a gap noted by the Court in its previous Letter Order. (*See* Bae Aff. ¶¶ 29–36; D.E. No. 10 at 3–4). Specifically, Plaintiff's counsel affirms that Yongjin Bae, Qinyu Fan, Ge Qu, Shan Zhu, Yuezhu Liu, and Guofeng Li are all experienced attorneys duly admitted to practice law who charge an hourly rate of $300. (Bae Aff. ¶¶ 29–35). He additionally affirms that Ziyi Gao is an admitted attorney who was practicing as a law clerk and charged an hourly rate of $275. (*Id.* ¶ 34). Finally, he affirms that Maritza Yanes is a bilingual paralegal who charges an hourly rate of $175. (*Id.* ¶ 36). The Court finds that these hourly rates are reasonable when compared to the rates charged in FLSA cases with similar circumstances. *See Morales*, 2022 WL 1718050, at *8 ("Courts in this District routinely find hourly rates between $275 and $450 to be reasonable in FLSA actions, depending on the experience of the attorneys.").

The records of attorney hours worked on this case submitted as an attachment to Plaintiff's counsel's affirmation indicate that the total number of hours worked by all individuals at the law firm was 66.80 hours. (D.E. No. 12-6 at 6). The records reflect that most of this time was spent

17

on preparing submissions related to Plaintiff's requests for default judgment. (*Id*. at 1–6). The Court concludes that 66.80 hours for the work performed in this case is reasonable. *See Jian Zhang*, 2019 WL 6318341, at *4 (concluding that 68.46 hours was reasonable in an FLSA default case); *Punter v. Jasmin Int'l Corp.*, No. 12-7828, 2014 WL 4854446, at *7 (D.N.J. Sept. 30, 2014) (recommending that 40 hours of work performed by two attorneys in an FLSA default case be found reasonable). Accordingly, Plaintiff is entitled to the requested **$19,415.00** in attorney's fees. (Mot. at 23). Further, as Plaintiff's request for costs are supported by record evidence, the Court also finds that Plaintiff is entitled to **$622.85** in costs. (*See id*.; D.E. No. 12-7).

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Plaintiff's motion for default judgment. Judgment is entered in favor of Plaintiff in the amount of **$101,740.99** consisting of:

- **$36,563.43** in compensatory damages
- **$45,139.71** in liquidated damages
- **$19,415.00** in reasonable attorney's fees
- **$622.85** in costs

An appropriate Order accompanies this Opinion.

**Dated:** May 30, 2023         *s/Esther Salas*
                                **Esther Salas, U.S.D.J.**